## E. E. MASTIN *et al.* v. I. H. LEVAGOOD.

1. DANGEROUS MACHINE — *Owners Liable for Loss of Hand.* When the owners of a horse-power threshing machine are guilty of gross negligence by leaving the bevel wheel and cogs uncovered, knowing them to be imminently dangerous to human life and limb in this uncovered condition, and a workman, engaged in threshing with the machine in this condition, attempts to oil the cylinder without the knowledge of the uncovered condition of the bevel wheel and cogs, and in this attempt loses his hand, the owners of the machine are liable for damages occasioned by such injury.

2. —— *Duty of Actor.* In any voluntary act which may naturally result in the injury of another, the actor must see to it, at his peril, that injury does not follow, or he must respond in damages therefor.

3. —— *Duty of Owners — Danger, Foreseen.* When danger is foreseen and pointed out to the owners of a threshing machine by the uncovered condition of the bevel wheel and cogs, a duty is imposed upon them to use every possible precaution to avoid injury to those engaged in operating the machine or working about it.

### *Error from Marion District Court.*

ACTION by *Levagood* against *Mastin* and another, to recover damages for the loss of his hand. At the November term, 1888, judgment for the plaintiff for $1,331. The defendants bring the case to this court. The opinion states the facts.

*Keller & Dean,* for plaintiffs in error.

*Grattan & Grattan,* for defendant in error.

Opinion by SIMPSON, C.: The plaintiffs in error were the two-thirds owners of a horse-power threshing machine, the other third being owned by the father of one of them. When they went to a farmer's for the purpose of threshing his wheat with their machine, they furnished two feeders, one man to drive the horse-power, and one man to measure the grain, it being the duty of the farmer for whom they were threshing to furnish pitchers, and the other necessary help. On the 16th day of September, 1886, the plaintiffs in error were en-

gaged in threshing grain for one Pampella, with a Nichols & Shepherd horse-power machine. E. E. Mastin was driving, and Jack Mastin was feeding. Galbreth, whom the Mastins brought to the Pampella farm to feed, had traded work with one Rankin, who was in the employment of Pampella, and Rankin was feeding. Galbreth was hauling grain away from the machine. York, an employé of the Mastins, was measuring the grain. This defendant in error was pitching from the stack, and he was an employé of Pampella. During the work, and at about 4 o'clock P. M. of the 16th of September, 1886, Jack Mastin was feeding and was taken sick, and called to Rankin to take his place. Rankin did so, and recollecting that he had not recently oiled the cylinder, and knowing that Jack Mastin was sick, called to the defendant in error, who was pitching grain from the stack to the feeder, to oil the cylinder. The machine in use was a vibrator, of the Nichols & Shepherd pattern. The large iron wheel revolves rapidly, and when so revolving the exposed bevel wheel and cogs are imminently dangerous to human life and limb. The manufacturers of the machine make a strong iron shield to be placed over the wheel and cogs, to render it safe to oil the cylinder or to do other work about it. In operation, the straw naturally lodges on, over and about the wheel and cogs, and conceals them, and makes it necessary, when any one is about to oil the cylinder, to remove the straw, and this is generally done with the hand. The shield had become so impaired that it was impossible to fasten it, or it would require great extra work to do so. It seems to be admitted that when the shield was not on, the wheel and cogs were imminently dangerous, and there is no question but that during the two days threshing at Pampella's, and at the time the defendant in error lost his hand, the shield was not on, and the wheel and cogs were uncovered, except as hidden by the straw. To oil the cylinder, one has to reach up and over the shield to get the oil cup, and when the shield is on it can be oiled without danger. When the shield is off, and one knows it, to avoid imminent peril, the oil can is reached in an opposite direction from that

used when the shield is on. The defendant in error, having inquired, was told where the oil can was, and went to the side on which the large iron bevel wheel is situate, at a point where the tumbling-rods connect with the horse-power, and the wheel revolves rapidly in cogs on the end of the cylinder, attempted to brush away the straw covering up the wheel, when his hand was caught in the cogs of the bevel wheel and was mashed. He brought this suit to recover damages for the loss of his hand, and was awarded $1,331. The jury returned answers to special interrogatories as follows:

"1. Did not the plaintiff know, at and before the time he attempted to oil the cylinder, that the shield was off the bevel pinion? A. No.

"2. Did not the plaintiff know that it was dangerous, if it was dangerous, to attempt to oil the cylinder when the shield was off? A. No.

"3. Could not the plaintiff, in the exercise of ordinary prudence and care, have known that the shield was off? A. No.

"4. Would not the plaintiff have known that the shield was off if he had been ordinarily attentive to what he saw about the machine, and what he heard said by the defendants or others? A. Plaintiff did not know it was off.

"5. How much damage, if any, do you allow on account of the physical and mental suffering of the plaintiff? A. $100.

"6. How much damage, if any, do you allow on account of the loss of plaintiff's hand? A. $997.

"7. How much damage, if any, do you allow on account of plaintiff's expenditures for medicine and surgical services? A. $130.

"8. What sum of money, if any, do you allow as exemplary damages? A. None."

The admitted fact is that the uncovered bevel wheel was very dangerous. It is established by the evidence, and there is no controversy as to the fact, that the owners of the machine knew that it was uncovered, that they had been warned of the dangerous consequences, and that they were guilty of gross negligence for using it in that condition. It is equally clear from the evidence, and the jury so find, that the defendant in error did not know that the bevel wheel was uncovered and that the shield was not on. Now, on this state of facts,

separate and apart from any contractual relations, or any question as to the attitude of these parties as master and servant, the operation of this machine in its dangerous condition imposed a duty on the owners and operators thereof toward all who were engaged in the work, or who by any possibility, in the discharge of duty or in the performance of labor, might be brought in contact with it, that was certainly disregarded.

2. Duty of actor For it may be stated as a general rule, that where any voluntary act may naturally result in the injury of another, the actor must see to it, at his peril, that injury does not follow, or he must respond in damages therefor, and this is true regardless of the motive or the degree of care with which the act is performed. (*Hay v. Cohoes Co.*, 2 N. Y. 159; *Tremain v. Cohoes Co.*, 2 id. 163; *Cahill v. Eastman*, 18 Minn. 324; *Phinizy v. Augusta*, 47 Ga. 260; *St. Peter v. Denison*, 58 N. Y. 416; *Wilson v. New Bedford*, 108 Mass. 261; *Scott v. Bay*, 3 Md. 431; *Cooper v. Randall*, 53 Ill. 24; *G. B. & L. Rly. Co. v. Eagles*, 9 Colo. 544.)

This rule applies to these plaintiffs in error in all its vigor. They operated the machine with the knowledge that the uncovered wheel was imminently dangerous to those working around it. They did this, too, after warnings that injurious consequences were liable to follow such use. The injuries resulting to the defendant in error were the natural and probable result of the use of this machine with the cogs and wheel in this uncovered condition. Its danger was fore-

3. Duty of owners—danger, foreseen. seen and pointed out to the owners, and the duty was imposed upon them to adopt every possible precaution to avoid such a consequence. It seems clear to us, under the uncontradicted evidence respecting the danger of operating the machine in such manner, and of the knowledge of the Mastins of the danger, and of the want

1. Dangerous machine— owners liable for loss of hand. of knowledge on the part of the defendant in error that the wheel was uncovered, that the right of recovery is clear and undoubted. It was an act of practical necessity that the machine should be oiled, as the business both of the Mastins and Pampella was to be ex-

pedited by it.    The feeder, whose business or duty it was to
oil when the other feeder was actively engaged at the mouth
of the machine, was prostrate on the ground, sick and dis-
abled.    Anyone working about the machine, either for the
Mastins or for Pampella, or for both, could be called upon to
do this special work, but when called upon was entitled to
have all the necessary protection to save him harmless while
performing the special labor.    We do not understand that
there is any cast-iron rule that forbids a man who is engaged
in pitching from the stack from attempting to oil the machine
at the request of anyone whose duty it is to see that the ma-
chine is in proper working condition.    The evidence in this
particular case shows clearly that, if the shield had been on
and the wheel covered, any person could have oiled the ma-
chine without any danger to life or limb; hence, the immediate,
adequate and efficient cause of the injury is found in the fact
that the wheel was negligently and knowingly left uncovered
by these plaintiffs in error.    Whatever intermediate acts may
have been committed by Rankin or by other employés, the
injury must rest for an efficient cause on this act of negligence
of the plaintiffs in error.    On general considerations growing
out of the contract and the nature of the employment of the
defendant in error, he was bound to do and perform, within
reasonable limits, any ordinary act expediting the business in
which all parties there present were engaged that might be re-
quested or demanded of him.    He was designated by some one
in authority to pitch from the stack, and he was directed by one
who had authority to feed the machine, and to see that it was
running properly, and to oil the machine.    Both of these acts
and his faithful performance of them were necessary ones, and
expedited the business of both the Mastins and Pampella, and
resulted to their benefit.    We do not understand that the de-
fendant in error was either a volunteer or an intermeddler, in
the common acceptation of the term.    He was there as an
employé of Pampella, to perform the labor assigned him,
subject to the orders and directions of those who had charge
of the various branches of the work.    Pampella and the

Mastins were associated together for a common purpose, and to do a particular part of the work. In the absence of some special controlling direction, the duty of the defendant in error was to do and perform all acts requested of him that were reasonable and he was capable of doing to expedite the associated effort. If the shield had covered the wheel, it would have been a very ordinary act to have oiled the machine when directed to do so by the person that all agree was charged with the duty of seeing that it was properly oiled; hence, we regard all this contention about the defendant in error being a volunteer or intermeddler as having no force or bearing. He was rightfully there. It was a part of his duty, under his contract of employment, to do and perform all ordinary acts of which he was capable, and which he was directed to do by those having charge of the work, that was necessarily included in its practical operation. Hence it seems that there is a direct responsibility to him by reason of his rightful presence there, and his lawful participation in the work on the part of the Mastins, independent of the inquiry as to whether he was an employé of the farmer or the owners of the machine.

It seems to be an established fact in this case that the operation of the machine with the uncovered wheel was imminently dangerous, and this is equivalent to saying that the owners of the machine were guilty of gross negligence in its operation. The great bodily harm of some one working about the machine without the knowledge that the wheel was uncovered was the natural and almost inevitable consequence of such gross negligence. The uncovered condition of the wheel imposed upon its owners the exercise of the highest degree of caution. This increase of duty arose out of the nature of the business and the danger to others incident to the operation of the machine. The duty of exercising great caution by the owners of the machine did not arise out of the contract with Pampella to do his threshing, but grew out of the wrong being done by the use of an uncovered wheel, known by them to be imminently dangerous. The owner of a horse and cart who leaves them un-

attended in the street is liable for any damage which may result from his negligence. (*Lynch v. Nurdin*, 1 Adol. & E. [N. S.] 29; *Illidge v. Goodwin*, 5 Car & P. 190.)

The owner of a loaded gun who puts it into the hands of a child, by whose indiscretion it is discharged, is liable for damages occasioned by the discharge. (*Dixon v. Bell*, 5 Maule & S. 198.) The general rule is, that damages for which a party is liable are those, and those only, which are the natural and necessary consequences of his acts. (*Kellogg v. Chicago Rld. Co.*, 26 Wis. 267; *Ryan v. N. Y. C. Rld. Co.*, 35 N. Y. 211.) There is this marked distinction between an act of negligence imminently dangerous and one that is not so: the guilty party being liable in the former case to the party injured, whether there was any relation of contract between them or not, but not so in the latter case. (*Colegrove v. Harlem Rld. Co.*, 6 Duer, 410; *Burk v. DeCastro*, 11 Hun, 357.) Where contractors entered into a contract to put a cornice on a mill, the mill-owners to furnish the necessary scaffolding, and the scaffolding furnished, being defective, fell and killed an employé of the contractors, the mill-owners were held liable because the injury was the natural consequence of their negligence in constructing the scaffolds. (*Coughtry v. Woolen Co.*, 56 N. Y. 128; *Cook v. Dock Co.*, 1 Hilt. 437; *Smith v. N. Y. C. Rld. Co.*, 19 N. Y. 130.) So, in this case, the injury to the defendant in error was the natural consequence of the gross negligence of the owners of the threshing machine in leaving the wheel with its imminently dangerous cogs uncovered. That it was dangerous to human life and limb, is unquestioned. That the Mastins knew it was, is conclusively established. Despite the warnings of friends and neighbors, they persisted in its use in this dangerous condition. The natural result of this gross negligence was the serious injury of the defendant in error. Their answer to his demand for damages is, that he was not their servant. This answer, addressed to a man who was there in the regular course of employment to aid the accomplishment of the very work for which the owners of the machine had brought it to the farm of Pampella, is not a sufficient

one.   His duty was to do and perform such acts as assisted in the accomplishment of the common design.   He did not direct the work, or had no right to, or was not appointed or selected for that purpose.   His duties were assigned by those who had the controlling authority.   His duty was obedience to the directions of those in authority, or to those who seemed from the ordinary course of affairs to be in authority.   In obedience to a direction, a request or a command by one who was in actual control of the machinery, he attempted to oil the cylinder.   The act attempted appears to have been one of absolute necessity, requiring immediate attention.   It was an ordinary act, unattended with danger, that any reasonably prudent man could perform without injury, if it had not been for the gross negligence of the Mastins.   Rankin, who made the request or gave the direction, was in sole charge of that part of the machinery about which the request was made and the direction given.   He had been in charge for two days, with the knowledge, consent and approval of the owners of the machine.   The writer of this opinion is clear in his conviction that, under these circumstances, Rankin was for all legal purposes the employé of the Mastins, in charge of this branch of the machinery, responsible for its successful operation, and fully authorized and empowered to do or cause to be done any act that was necessary for the accomplishment of that part of the work; that the defendant in error, by reason of his employment there, was subject to all reasonable orders and directions necessary to the safe conduct of the business by those in authority; that as a matter of law he was an employé of the Mastins to the same extent and to the same degree as if he had been directly employed by them; that the relation of master and servant was established between them by reason of his employment by Pampella to engage in the associated work of the Mastins and Pampella; that the Mastins are liable to him for injuries caused by their gross negligence because of said employment; and that they are liable both because they used this dangerous machinery, with the knowledge of its danger, and because they failed to exercise reasonable

care to protect an employé. The instructions of the court complained of, being in substantial conformity to these views, are not erroneous.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.