CASE 21—ACTION BY MARY McCULLOUGH'S, ADM'R AGAINST THE GEORGE-TOWN TELEPHONE CO. FOR CAUSING THE DEATH OF PLAINTIFF'S INTESTATE.—MAY 11.

# Georgetown Tel. Co. v. McCullough's Admr.

APPEAL FROM SCOTT CIRCUIT COURT—JAS. E. CANTRILL, CIRCUIT JUDGE.

JUDGEMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

TELEPHONE COMPANIES—NEGLIGENCE—INJURIES—EXPLOSIVE SUB-STANCES—PROXIMATE CAUSE.

Defendant telephone company rented two rooms in a building, one of which was used as an exchange, and the back room for storing materials. The owners of the building employed a carpenter to put up a partition next to the store room, in order to accomplish which it was necessary to remove the materials stored therein, and in doing so the carpenter ordered his assistant to remove a box of dynamite from the shelves. Such assistant carried the box into the common hallway, and placed it in a corner near the doorway of defendant's operating room,

where from some unknown cause, it was exploded, injuring plaintiff's decedent, who was at the time in defendant's operating room in the performance of her duties as one of defendant's operators. HELD, that the proximate cause of such injury was the negligence of the carpenter's assistant in placing the box where he did, and not the negligence of the company in storing the dynamite in its store room.

VICTOR F. BRADLEY, ATTORNEY FOR APPELLANT.

Our contention in this case is:

1.  Appellee fails utterly to show that the box of dynamite which exploded and killed plaintiff's intestate was placed in the room where it was, by any of appellant's employes or by appellant's authority, or that any of appellant's employes knew that it was there.

2.  That decedent was an employe of appellant, and she was under as much obligation to discover the fact that the dynamite was there as any of the other employes of appellant.

3.  Even if appellant was guilty of negligence in having dynamite in the room, the negligence was not the proximate cause of decedent's death. Woods Mayne on Damages, p. 71, note; Rucker v. Athens Mfg. Co., 54 Ga., 84; Digest of Am. Dec. & Rep. Rapalje's, vol. 2, p. 2476; Tutew v. Hurley, 93 Am. Dec., 154; Am. & Eng. Ency. of Law, vol. 16, pp. 444, 445; McGahan v. Indianapolis, &c., Gas Co., Am. Rep., vol. 49, p. 199; Pickett v. Wilmonton, &c., Co., *Idem*, vol. 53, p. 611; Reed v. Evansville, &c., R. R. Co., *Idem*, vol. 53, p. 391; Towles v. Briggs, *Idem*, vol. 72, p. 537.

4.  The court improperly instructed the jury in giving it an instruction as to the probable duration of the life of decedent as determined by the mortuary tables. Ky. Law Rep., vol. 16, p. 722; 9 Bush, 736; 83 Ky., 128; Alabama, &c., R. R. Co. v. Jones, Am. St. Rep., vol. 2, p. 121.

5.  The verdict of the jury is contrary to the evidence.

6.  Appellant's motion for a peremptory instruction should have been sustained.

MONTGOMERY & LEE, ATTORNEYS FOR APPELLEE.

POINTS AND AUTHORITIES.

1.  The question of what is the natural or proximate cause of particular injuries is a question of fact for the determination of the jury, dependent upon the circumstances of each case. Watson on Damages for Personal Injuries, sec. 166, and cases there cited; Owensboro City R. Co. v. Hill, 21 Rep., 1638.

2. To excuse the defendant upon the ground of intervening act of third party, the act complained of must not have been merely negligent, but must have been criminal and willful, so that it would of itself have been sufficient to have produced the injury and without which the injury would not have happened. In such case the original wrongdoer is not liable, because his act was not the proximate cause of the injury. Bosworth v. Brand, 1 Dana, 377.

3. It is no defense that the negligence of a third party contributed to the injury. Baumeister v. Markham, 101 Ky., 122; Watson on Damages for Personal Injuries, sec. 71, and cases cited; Myers v. Malcolm, 6 Hill (N. Y.), 292; Flora v. Pruett, 81 Ill. App., 161; Pastene v. Adams, 49 Cal., 87.

4. The court did not err in telling the jury what the expectancy of life was under the American life annuity tables, as the jury were not told that they were bound by them, but that they were merely given to the jury as a basis upon which they might estimate the probable length of life from the facts in the case and within their knowledge. The expectation of life was properly given as 34.59 years, as shown by the table, page 1688, Kentucky Statutes, and approved and discussed in 3 Bush, 667.

5. If an error was committed in instructing the jury as to the measure of damages, it is not reversible unless the appellant's substantial rights have been prejudiced, "and that it does so must as clearly appear as the error itself." Williams v. Rogers, 14 Bush, 776.

6. Instructions which are erroneous, but clearly not prejudicial to the appellant's rights, will not authorize a reversal. North v. Ky. C. R. R. Co., 9 Rep., 993.

7. This court will not reverse judgment for less than $5,000.00 for loss of life, because all of the law as to proper measure of damages is not given.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

The Georgetown Telephone Company is a corporation operating a telephone line in Georgetown, Ky. It occupied, at the time of the accident involved herein, two rooms in a building owned by Herring, Jenkins & Co., on the south side of Main street. The front of these two rooms was used as an operating room, while the back room was used for storing the materials used by the corporation in its business. The decedent, Mary McCullough, was one of the operators employed by the

corporation, and her place of business was in the front room. The two rooms opened into a hall common to all the tenants of the owners of the building. On the 7th day of January, 1903, the owners of the building, Herring, Jenkins & Co., employed a carpenter—one Cleary—to partition off a bathroom next to the storeroom of appellant; and, in order to do this, it was deemed necessary to move some shelves, and their contents, in the wareroom of appellant. In preparing to do this Cleary found upon one off the shelves a box half full of dynamite; there being probably six or seven pounds of this explosive. Fearing that it might explode, he requested a young man by the name of Loots, who occasionally worked for appellant, but who was not then in its employ, to remove the dynamite from the shelves. This Loots refused to do, whereupon Cleary ordered one Goddard, who was in his own employ as assistant, to remove it. Goddard did so, taking the box from the shelf where it had been, and carrying it out into the common hallway, where he placed it in a corner near the front door of appellant's operating room. Here, from some unknown cause it was exploded. Just immediately before the explosion, appellee's decedent was standing on the inside of the door of the operating room, leading into the hallway, with her hand upon the door knob. When the explosion took place, the concussion blew in the door with such force as to throw her across the room, smashing and breaking her arm, from which injury she afterwards died. Appellee, having qualified as the administrator of her estate, instituted this action to recover damages for her death; alleging that it was caused by the negligence of appellant in failing to furnish a safe place for her to work. The answer controverted all of the material allegations of the petition, and thus completed the issues. The trial resulted in a verdict for appellee in the sum of $4,983, 33.

The first question that meets us on this appeal is whether or not appellant was entitled to a peremptory instruction upon the evidence establishing substantially the foregoing facts. Assuming for the purposes of this case, that it was negligence in appellant to keep the dynamite in question in the back part of its storeroom, does it therefore follow that it is responsible for the accident by which the decedent was injured? It is neither alleged nor proved that Cleary was in the employ of appellant, or that he went into its wareroom by its knowledge or consent, or that it knew or approved in any way of the removal of the dynamite from the shelf in the ware room to the corner in the hall. The only person other than Cleary and his assistant, who seems to have known of the removal of the dynamite, was young Loots, who occasionally worked for appellant as assistant to one of its employes, but who on the day in question was not in its employ. And it does not appear that he even knew where the dynamite was placed when it was removed from the shelf. That the dynamite, when placed in the public hall, was in a very much more exposed and dangerous place than when on the shelf of appellant's wareroom, is too obvious to require demonstration. But that it was, shortly after being placed there, ignited by, perhaps some one throwing into the box a lighted match, or the stump of a cigar, or cigarette, shows this to be true, if evidence on this point is needed. It does not follow that, because one is negligent and an accident occurs, therefore, the author of the negligence is liable in damages. The negligence must be the proximate cause of the injury, in order to establish liability.

Shearman & Redfield, in their work on Negligence (5th Edition) section 25, say: "The fact that the defendant has oeen guilty of negligence followed by an accident, does not make him liable for the resulting injury, un-

less that was occasioned by the negligence. The connection of cause and effect must be established. And the defendant's breach of duty, not merely his act, must be the cause of the plaintiff's damage. The defendant's negligence may put a temptation in the way of another person to commit a wrongful act, by which the plaintiff is injured, and yet the defendant's negligence may be in no sense a cause of the injury." In section 26 it is said: "The proximate cause of an event must be understood to be that which, in a natural and continual sequence, unbroken by any new, independent cause, produces that event, and without which that event would not have occurred. Proximity in point of time or space, however, is no part of the definition. That is of no importance, except as it may afford evidence for or against proximity or causation; that is, the proximate cause which is nearest in the order of responsible causation." In section 32 the authors say: "The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause. It is a superseding cause, whether intelligent or not, if it so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. It is a responsible one if it is the culpable act of the human being who is legally responsible for such act. The defendant's negligence is not deemed the proximate cause of the injury when the connection is thus actually broken by a responsible intervening cause."

The case of Bosworth v. Brand, 1 Dana, 377, was an action in which Brand obtained a verdict and judgment against Bosworth for the value of a slave killed on Bosworth's farm at a negro frolic or dance. It seems that Bosworth permitted

some fifty negroes to assemble and dance at an outhouse; "that a patrolling party surrounded the house about midnight for the purpose of apprehending the negroes and breaking up the frolic; that the negroes refused to surrender when called upon so to do, and endeavored to make their escape; that one of the patrol without any necessity for so doing, wantonly fired a pistol loaded with balls and buckshot into a dark room crowded with negroes, and thereby killed the slave of Brand." It was unlawful for Bosworth to permit the negroes to assemble in the manner in which they did, and the court said: "That this act renders the conduct of Bosworth illegal, in permitting the assemblage of the negroes, and that it renders him liable to the penalty therein named to be recovered in the manner therein prescribed, there is no doubt. But that he is liable for every accident or injury happening to the slaves of others whilst so assembled, or in going to or coming from his farm, is an inference by no means so obviously deducible therefrom. . . . It is true, in general, that a man is entitled to reparation for every damage he sustains from the unlawful action or omission of another. But the damages must be the direct and immediate, or at least proximate and natural, consequence of the act or omission complained of. It will not do to carry it to every consequence, however remote, which can be traced to the particular action or omission, and much less to such things as are not a natural consequence, and may have arisen from other and extraneous causes. Thus it is said (Buller's Nisi Prius, 25) 'that if one whip my horse, whereby he runs away with me, and runs over a man, he may have an action against such person, for the whipping was an act of folly, and he ought to be answerable for the consequences. *A fortiori*, I might maintain an action, if I received any hurt, because the consequence is more natural.' He also suggests the propriety of proving in such

cases that the injury was such as would probably follow from the act done. 'So, also,' he says, 'if a man lay logs of wood across a highway, whereby my horse stumbles and flings me, I may bring an action, for, whenever a man sustains a particular injury by a nuisance, he may maintain an action; but then the injury must be direct, and not consequential, as by being delayed in a journey of importance.' For which he recites Carthew, 194, 451. Pothier, in his treatise on Obligations (page 97), says: 'If a man sells me a cow which he knows to be infected with a contagious distemper, and conceals it from me, he is responsible for the damage I suffer, not only in that particular cow, but also for my other cattle to which the distemper is communicated.' But he says, if the loss of his cattle prevented him from raising a crop, which prevented him from paying his debts, and his creditors in consequence seize his property and sell it much below the value, that, these consequences being too remote, the fraudulent vendor is responsible for none of them. Suppose the slave of one goes to the farm of another, and is not driven away in the time prescribed by the above-cited act; that in consequence he is overtaken on his return home by a hurricane, and killed by the falling of timber, or is accidentally shot, or even whilst remaining after the prescribed time he is accidentally killed; could the owner of the slave recover his value from the owner of the farm? Or, to take a case under another clause of the statute, that slave enters a tippling house, and purchases a dram and whilst in the act of drinking it he is accidentally or designedly shot by some one from without the house; would the seller of the dram be responsible for the value of the slave? It seems to us that all these propositions must be answered in the negative, and that the contrary opinion has no plausible foundation in either law or justice."

In the case of Insurance Company v. Tweed, 7 Wall., 44,

19 L. Ed., 65, the rule as to proximate cause is thus stated by Mr. Justice Miller: "One of the most valued criteria furnished us by these authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of misfortune, the other must be considered as too remote."

In the case of McGahan v. Indianapolis Natural Gas Company (Ind. Sup.) 37 N. E., 601, 29 L. R. A., 355, 49 Am. St. Rep., 199, the gas company had negligently permitted one of its pipes to become defective, whereby McGahan's house became filled with it, whereupon he employed a plumber to examine the house for the cause of the leakage. The plumber went into the room with a lighted lamp, thus causing an explosion. It was held that the negligence of the plumber, and not that of the gas company, was the proximate cause of the injury, and in the note to this case it is said: "When the independent act of a responsible person intervenes between the defendant's negligence and the injury sustained, such act breaks the causal connection between the negligence and the damage, and he who is guilty of the original negligence is not chargeable, but redress must be sought from him who directly caused the injury, unless the intervening act is such as might reasonably be anticipated as the natural or probable result of the original cause." See, also, Reid v. Evansville, etc., Railroad Company (Ind. App.) 35 N. E., 703, 53 Am. St. Rep., 391.

Applying the principle enunciated in the foregoing authorities, we have no hesitancy in reaching the conclusion that the act of Cleary and Goddard in removing the dynamite from its comparatively safe position on the shelf in the appellant's wareroom to the exposed position in the public hall was the proximate cause of the explosion which resulted in the injury

complained of. Suppose Goddard, under the instructions of Cleary, had taken the dynamite out on the public street and placed it at the door of an adjoining building, and it had there been ingnited and exploded, just as it was in the hall by appellant's door; would it be contended then that appellant was responsible for any damage arising from this wrong? We think not. As said before, neither Cleary nor Goddard was in the employ of appellant, nor were they, so far as this record discloses, acting with its approval. So far as the evidence shows, they were trespassers in the wareroom where the dynamite was, and wrongdoers in removing it at all. According to the evidence, as shown in this record, what defense could Cleary and Goddard have offered had they been sued for their wrongful act in removing the dynamite to the hall? Certainly between the original negligence—if such it be—of appellant in permitting the dynamite to remain on the shelf in its wareroom, and the injury of the decedent, they intervened as responsible causal agents, and their wrongful act was the direct and proximate cause of the injury inflicted.

The court should have sustained appellant's motion for a peremptory instruction. Wherefore the judgment is reversed, for proceedings consistent with this opinion.