CASE 22.—ACTION BY GEORGE LOGAN AGAINST THE CIN-
CINNATI, NEW ORLEANS & TEXAS PACIFIC
RAILWAY COMPANY AND OTHERS.—June 16, 1910.

# Logan v. Cin., N, O, & T. P. Railway Co., &c.

Appeal from Jessamine Circuit Court.

J. M. Benton, Circuit Judge.

Judgment for defendants on a directed verdict,
plaintiff appeals.—Affirmed.

1. Negligence—"Proximate Cause."—The injury must have
been the natural and probable consequence of the negligent
act which an ordinarily prudent person ought reasonably to
have foreseen might have occurred as a result of the negli-
gence, and without which the injury would not have occurred;
in order to make such act the "proximate cause" of the in-
jury, and if a cause is remote and only furnished the
condition or occasion of the injury, it is not the proximate
cause thereof.

2. Railroads—Acts Constituting Negligence.—Defendant rail-
road companies placed a car on the switch of a manufacturing
company, the brakes of which were known to be bad by
their employes, who chocked it on a grade to prevent it from
moving, and thereafter employes of the manufacturing com
pany with knowledge that the brake would not hold attempted
to let it down for unloading by controlling it by means of
chocks, but the chocks failed to hold and it ran into other
cars on the switch which were knocked against plaintiff, who
was engaged in picking up coal in the manufacturing com-
pany's employment. Held, in an action against the railroad
companies for resulting injuries that the employes of the
manufacturing company were negligent in attempting to move
the car.

3. Railroads—Injuries to Persons Working About Cars—Proxi-
mate Cause.—The negligence of the manufacturing company's
employes in attempting to move the car was the proximate
cause of plaintiff's injuries and not the defective brake.

ROBT. HARDING, E. B. HOOVER and EMMETT PURYEAR for appellant.

B. D. WARFIELD, WALLACE & HARRIS and CHAS. H. MOORMAN and N. L. BRONAUGH for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, George Logan, was struck by a car and knocked from a trestle near the mill of the Kentucky Barytes Company, one of his legs being fractured between the knee and foot, and the foot of the other leg badly crushed. The fractured leg had to be amputated just below the knee, and the foot of the other leg at the ankle joint.

Appellant's injuries were received under the following circumstances: The railroad tracks of the Cincinnati, New Orleans & Texas Pacific Railway Company, and those of the Louisville & Atlantic Railroad Company, intersect at Nicholasville; at a distance of a half or three-fourths of a mile from the point of intersection, a spur track of considerable length runs from the main track of the Louisville & Atlantic Railroad Company to the mill of the Kentucky Barytes Company; the spur is used by the latter company in getting to its mill cars loaded with crude barytes brought to it over the lines of the two railroads mentioned for manufacturing the refined product, and for transporting over their lines cars loaded with the refined product of its mill. Cars loaded with barytes consigned to the Kentucky Barytes Company are left by the railroad companies standing on the spur track near the mill of the former, and when it gets ready to unload the cars they are pushed along the spur track by its employes to the millshed, where they are emptied of their contents. On the 22d day of

March, 1909, a car of the Cincinnati, New Orleans &
Texas·Pacific Railway Company loaded with barytes
for the use of the Kentucky Barytes Company was
attached by the Cincinnati, New Orleans & Texas Pa-
cific Railway Company to one of its·freight trains at
Danville, and carried to the point of physical connec-
tion between its track and that of the Louisville &
Atlantic Railroad Company, at Nicholasville, and
there delivered to the latter company, which hauled it
over its track to and upon the spur track of the Ken-
tucky Barytes Company, and on March 23d, there
left it to be unloaded by the employes of that com-
pany.  It is admitted that the brake upon the car in
question was out of repair, and in such a defective
condition as to render it useless in controlling the
movements of the car and that this was known to the
two railroad companies when it was left on the spur
track of the Kentucky Barytes Company.    Indeed,
the servants of the Louisville & Atlantic Railroad
Company recognized the defective condition of the
brake and its worthlessness, and for that reason
chocked or scotched the wheels of the car with timbers
and rocks, thereby making it steady and immovable
on the track, and in that safe condition left it.    On
March 24th, the Kentucky Barytes Company, being
scarce of fuel for operating its plant, sent the appel-
lant, who was then in its service, to the trestle of the
spur track to gather up for use in heating its boilers
coal that had from time to time fallen on the timbers
of the trestle, and the adjacent track in unloading
cars of coal received by the company.    While appel-
lant was engaged in collecting coal upon and near the
trestle, another employe of the Kentucky Barytes
Company, one Wm. Davis, charged with the duty of
unloading its cars, without an express direction from

his employer to do so, undertook to remove the car with the defective brake to its sheds for unloading. Davis and an assistant, Ben House, whom he called to aid him, upon reaching the car discovered the defective condition of the brake, and the former by getting upon the car and testing it found that it would not work and could be of no use in controlling the movements of the car; yet he conceived the idea that by removing the chocks from the wheels of the car, he and House could in pushing it to the shed control its movements with a piece of timber they procured for use in scotching or chocking it. So House, by Davis' direction removed the chocking from the car wheels and the latter started the car by pushing it from the rear; the track at that point being slightly downgrade, in its approach to the millsheds. the car soon attained such momentum that Davis and House were unable to check or control it with the piece of timber referred to, and becoming uncontrollable, it ran against two cars standing on the spur track between it and the trestle which caused them to move forward with such force as to strike appellant and inflict upon him the wellnigh fatal injuries he sustained; he being unaware of the starting of the car with the defective brake as he could not see it from where he was at work owing to the presence on the track of the two intervening cars against which it ran.

This action was brought by appellant against the Kentucky Barytes Company and the two railroad companies mentioned to recover damages for his injuries. At the conclusion of the appellant's evidence, the appellees, Cincinnati, New Orleans & Texas Pacific Railway Co., and the Louisville & Atlantic Railroad Company, and their codefendant, Kentucky Barytes Company, asked a peremptory in-

struction directing the jury to find for them, which the trial court then refused, but at the conclusion of all the evidence the motion therefor being renewed, the peremptory instruction was granted as to the appellees railroad companies, but refused as to the Kentucky Barytes Company. The jury returned a verdict as directed, and judgment was entered in accordance therewith. Appellant was refused a new trial; hence this appeal.

The peremptory instruction was granted because the trial court was of opinion that the failure of the appellees to repair the brake of the car, or to equip it with a proper brake, was not the proximate cause of appellant's injuries, and in this conclusion we are constrained to concur. It may be conceded that appellees were negligent in delivering to the Kentucky Barytes Company the car with a defective brake, but they were not liable for the injuries received by appellant, as an employe of the Kentucky Barytes Company, from that company's use of the car in its defective condition, unless their negligence was the proximate cause of such injuries; and in order to establish proximate cause it was necessary that casual connection between appellees' negligence and the injury should have been shown and that without such negligence the injury would not have been inflicted.

As well said in 29 Cyc. 492, 493: "To constitute proximate cause creating liability for negligence the injury must have been the natural and probable consequence of the negligent act. It is the cause which naturally produces a given result. The negligence must be such that by the usual course of events would result in an injury unless independent moral agencies intervene in the particular injury. But where an event is followed in natural sequence by a

result it is adapted to produce or aid in producing, the result is the consequence of the event. It is not necessary, however, that the injury should be the usual, necessary, or inevitable result of the negligence.'' ''In addition to the requirement that the result should be the natural and probable consequence of the negligence, it is commonly stated that the con- sequence should be one, which in the light of attend- ing circumstances, an ordinarily prudent man ought reasonably to have foreseen might probably occur as the result of his negligence. * * * If the injury could not have been reasonably anticipated as the probable result of an act of negligence, such act is either remote cause or no cause.''

Another element of the doctrine in question is stated in the same volume, at page 496: ''A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition, or give rise to the occasion by which the injury was made possible, if there intervened be- tween such prior or remote cause and the injury a dis- tinct, successive, unrelated, efficient cause of the in- jury. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause. * * *'' Thompson on Neg- ligence, sec. 2; Cuff v. Newark & N. Y. R. R. Co., 35 N. J. Law, 17, 10 Am. Rep. 215; Watson on Damages for Personal Injuries, secs. 33-35; Fowlkes v. South- ern Ry. Co., 96 Va. 742, 32 S. E. 464.

Tested by the principles stated, we do not think the facts of this case warrant a finding that appel- lant's injury was the natural proximate consequence of appellees' failure to provide the car in question with a reasonably safe brake, or that it ought to have been foreseen by them in the light of the attending

circumstances. The breach of duty upon which an action like this is brought must not only be the cause, but the proximate cause, of the injury complained of. If it cannot be said that the result would have inevitably occurred by reason of the appellees' negligence, it cannot be found that it did so occur, and appellant is not therefore entitled to recover.

It was not made to appear from the evidence that the relation of employer and employe existed between appellees and appellant and there was also an absence of any contractual relation between them. It is patent, therefore, that appellees in failing to provide the car with a reasonably safe brake violated no duty they owed the appellant. It cannot fairly be contended that the car, though supplied with a defective brake, was an imminently dangerous instrument. On the contrary, unless put in motion, it was entirely harmless, and even when in motion was not necessarily dangerous. When left on the spur track its wheels were well chocked which rendered it immovable until the chocks were displaced. While it remained in that condition appellant ran no risk in going upon the trestle of the spur track or in performing the work of gathering the coal required of him by his employer, the Kentucky Barytes Company. The car was rendered dangerous by the act of Davis and House, other employes of that company, in removing the chocks and undertaking to remove the car to the place for unloading it.

It was admitted by both Davis and House, in giving their testimony on the trial, that upon arriving at the car they discovered that the brake was defective and would not work; indeed, the presence of the chocks in front of the wheels advised them of that fact; but according to their further statements, they satisfied

themselves that the brake was useless; Davis by climbing on the top of the car and trying to turn it, and House by inspecting it and ascertaining the precise nature of the defects; yet, with this knowledge they undertook to move the car by displacing the chocks and starting it by a push, believing they could control its movements by checking it at intervals with a piece of timber they thought suitable for the purpose. They soon discovered their mistake for the car immediately escaped their control and quickly collided with the other two cars standing on the track, thereby causing one of them to strike and injure appellant.

These undisputed facts show that the car was left by appellees on the spur track of the Kentucky Barytes Company in an altogether safe condition, where it remained 24 hours and until turned loose by the servants of the Barytes Company, who permitted it to get beyond their control and injure appellant. In thus attempting to move the car the servants of the Barytes Company were guilty of negligence and such negligence was the efficient cause of appellant's injuries. In other words, it was not on account of the defective brake that appellant received his injuries, but because of the manner in which the car was attempted to be moved by Wm. Davis and his assistant. As said in Mastin v. Levagood, 47 Kan. 36, 27 Pac. 122, 27 Am. St. Rep. 277: "There is a marked distinction between an act of negligence imminently dangerous and one that is not so, the guilty party being liable in the former case to the party injured, whether there was any relation of contract between them or not, but not so in the latter case."

It must be borne in mind that not only were appellant, and Davis, whose negligence and that of House,

his assistant, caused appellant's injuries, in the employ of the Barytes Company, but that appellees had no control of them or supervision of their work. It is likewise an undisputed fact that appellees had no control of the car containing the defective brake from the time it was left on the spur track until it was unloaded of the crude barytes and reloaded with the product of the Barytes Company's mill. When it was placed on the spur track by the appellee, Louisville & Atlantic R. R. Co., it was left at a point where the Barytes Company required it to be located and it was the duty of the latter company through its servants to remove it to the place of unloading, there unload it, then reload it with the product of the mill, and notify appellees to haul it away for transportation to its destination.

The case of Risques' Admr v. Chesapeake & Ohio Ry. Co., 104 Va. 476, 51 S. E. 730, presents a state of facts very similar to those in the case at bar. The railroad company furnished the Alleghany Ore & Iron Company cars with defective brakes, placing them on a side track to be moved by the ore and iron company and unloaded of freight belonging to it or loaded with its product. In the hauling of these cars by the ore and iron company the plaintiff's intestate, who was one of its employes, was killed. On the evidence the trial court directed a finding for the defendant. On the appeal the higher court, in sustaining the action of the trial court in part, said: "The plaintiff's intestate was an employe of the Alleghany Ore & Iron Company. The declaration shows that the cars were delivered by the railway company to the ore and iron company on a side track to be moved and either unloaded of freight belonging to the ore and iron company or loaded with the product of that com-

pany.  If the cars were without brakes or were equipped with unsound brakes, it was the duty of the ore and iron company to ascertain the fact by proper inspection, and either remedy the defect, or decline to use the car.  No relation of employer and employe existed between the defendant company, and plaintiff's intestate, or if he suffered any injury by reason of the car in question being without brakes, or equipped with unsound brakes, the liability, if any, would rest upon his master, the Alleghany Ore & Iron Company, for failure to make proper inspection, and not upon the defendant railway company.''

A similar conclusion was reached by the Supreme Court of Kansas in the case of McCallion v. Missouri Pacific Ry. Co., 74 Kan. 785, 88 Pac. 50, in which the plaintiff, who had been injured by a defective car furnished his employer by the railway company, was refused a recovery upon the ground that as his employers had taken possession of the defective car at the time he was injured. under the allegations of the petition and the law of master and servant, the master was responsible to the servant, and its negligence, instead of that of the railway company in furnishing the defective car, was the proximate cause of the injury.

The doctrine announced in the cases supra, has received the approval of this court in more than one instance.  In the case of Georgetown Telephone Co. v. McCullough's Admr, 118 Ky. 182, 80 S. W. 782, 26 Ky. Law Rep. 72, 111 Am. St. Rep. 294, a carpenter by direction of the owner was making repairs on a building upon a shelf, in a wareroom  in which the telephone company stored dynamite and other materials used in building and maintaining its lines. An assistant of the carpenter found it necessary to

temporarily remove from the wareroom the articles in question, and in doing so placed the box of dynamite in a corner of the hall near the telephone company's operating room in the same building; for some reason unknown the dynamite exploded, injuring the plaintiff's intestate who was at the time in the telephone company's employment as operator of its exchange. In holding that the negligence of the carpenter's assistant in placing the box of dynamite in the hall was the proximate cause of the intestate's injury, instead of the act of the telephone company in storing it in the wareroom from which it was removed, the court said: "The first question that meets us on this appeal is whether or not appellant was entitled to a peremptory instruction upon the evidence establishing substantially the foregoing facts. Assuming for the purposes of this case that it was negligence in appellant to keep the dynamite in question in the back part of the storeroom, does it therefore follow that it is responsible for the accident by which the decedent was injured? It was neither alleged nor proved that Cleary (the carpenter) was in the employ of the appellant or that he went into its wareroom by its knowledge or counsel, or that it knew or approved in any way of the removal of the dynamite from the shelf in the wareroom to the corner in the hall. That the dynamite when placed in the hall was in a very much more exposed and dangerous place than when on the shelf of defendant's wareroom is too obvious to require demonstration. * * * It does not follow that, because one is negligent and an accident occurs, therefore the author of the negligence is liable in damages. The negligence must be the proximate cause of the injury, in order to establish liability. * * * When the independent

act of responsible persons intervenes between the defendant's negligence and the injury sustained, such act breaks the casual connection between the negligence and the damage; and he who is guilty of the original negligence is not chargeable, but redress must be sought from him who directly caused the injury, unless the intervening act is such as might reasonably be anticipated as the natural or probable result of the original cause.'' Kasey's Admr v. Lou., H. & St. L. Ry. Co., 124 S. W. 380.

Counsel for appellant, in support of his contention that the case should have gone to the jury, quote from the case of Louisville & Nashville R. R. Co. v. Freppon, 134 Ky. 650, 121 S. W. 456, which he insists is strongly in point. We do not think that case sustains his contention. The plaintiff therein, an employe of the Henderson Tobacco Company, was injured by the fall of a car door in attempting to open it to unload the car which had been furnished by the railroad company and left at the place for unloading. No moving or other control of the car by the tobacco company was required; in fact, its employes had nothing to do with the car but to unload it. Besides, the car, by reason of the defect in the door, was an inherently and imminently dangerous instrument, as the defect was one that could not be discovered by a casual or ordinary inspection on the part of the person injured. So, it was properly held in that case that the railroad company was liable for the plaintiff's injuries as it had failed to keep the car in a reasonably safe condition and had not lost its control of it, and because it did not appear the plaintiff knew, or had reasonable ground to believe that the door would fall when he attempted to open it. The opinion differentiates the case from the

cases of Risque's Admr v. C. & O. Ry. Co., and Roddy
v. Missouri Pacific Ry. Co., 104 Mo. 234, 15 S. W.
1112, 12 L. R. A. 746, 24 Am. St. Rep. 333, and after
quoting from the opinions the excerpts included in the
opinion of the case at bar and declaring that neither
case is in conflict with the opinion in the Freppon
Case, concludes the opinion as follows: ''It will thus
be seen that the defective cars that caused the injury
to Risque had been turned over to the ore and iron
company by the railroad company to be used by the
ore and iron company in its business, and that they
were being so used by it at the time of the injury and
were under the control and management of the ore and
iron company.   When that company accepted the cars
from the railroad company, it took them in the con-
dition they were delivered to it and thereupon as-
sumed the duty of protecting its employes from in-
jury on account of the defective or dangerous condi-
tion of the cars.   * * *   Roddy v. Missouri Pacific
Ry., 104 Mo. 234, 15 S. W. 1112, 12 L. R. A. 746, 24
Am. St. Rep. 333, is also relied on by appellant, but a
careful reading  of the case shows that it is not in
conflict with the views we have expressed.   * * *''

It is apparent from the above quotation that this
court has approved the soundness of the conclusions
expressed in the opinions in the Risque and Roddy
Cases, and that those cases are, in fact and principle,
so like the case at bar as to control its decision   Ow-
ing to the already great length of the opinion we will
not discuss other cases in this jurisdiction cited by
appellant's counsel.   It is deemed sufficient to say
that they rest, in every instance, upon facts wholly
unlike those of the case at bar, and do not conflict
with the principles controlling it.

The defense set up by the answers of the appellees
justified the action of the trial court in overruling

appellant's demurrers thereto; and the admitted facts appearing from the evidence authorized the instruction peremptorily requiring the jury to return a verdict for them.

Wherefore the judgment is affirmed.