Robert SEIBEL, Plaintiff and Appellee,

v.

**SYMONS CORPORATION**, also known as Symons Mfg. Co., Defendant and Appellant.

Civ. No. 8928.

Supreme Court of North Dakota.

June 26, 1974.

Rehearing Denied Aug. 26, 1974.

**52**

Degnan, McElroy, Lamb, Camrud & Maddock, Grand Forks, for plaintiff and appellee.

Letnes & Marshall, Grand Forks, for defendant and appellant.

VOGEL, Judge.

The defendant, Symons Corporation (hereinafter manufacturer), has appealed from an order of the trial court denying its motion for judgment notwithstanding the verdict or in the alternative for a new trial, following entry of judgment based on a jury verdict in favor of the plaintiff in the amount of $25,033.90.

This is a products liability case in which the plaintiff, Robert Seibel (hereinafter employee), who was injured while working for Morrison-Knudsen & Associates (hereinafter employer), seeks recovery for injuries from the manufacturer, which manufactured steel concrete forms called "Symons Superforms," on which the employee was working when he fell and was injured as a result of the breaking of a weld on a V-shaped end-rail support rod to which he had attached the lanyard of his safety belt while he was in the process of assembling the steel concrete forms. The employee's claim is based on express warranty, implied warranty of fitness, and negligence in design or manufacture. The defendant interposed several defenses, including assumption of risk, contributory negligence, that it had adequately warned the employee of the danger which caused his injury, and that the manufacturer was insulated from liability by reason of its issuance of a warning to the employer as to the danger.

Morrison-Knudsen is a large contractor. At the time of this industrial accident it was involved in building a Missile Site Radar (MSR) complex associated with the Anti-Ballistic Missile Site located in the area adjacent to Nekoma, North Dakota. The components of the Symons Superform System, with the aid of the technical manual supplied by the manufacturer to its vendee, Morrison-Knudsen, were to be assembled at the contract site by Morrison-Knudsen into what are called "gang sections." These gang sections are then moved from place to place on the jobsite by cranes and trucks, and when placed in position the Symons Superform System acts as a mold for the placement of concrete to cast concrete walls. When the concrete has hardened, the forms are removed by crane and set into the next position for the casting of more concrete walls. The gang forms are disassembled and reassembled on the jobsite from time to time to accommodate different wall-forming requirements.

At the time of this industrial accident, two such gang sections had been set up facing each other to form the mold into which concrete would be poured to form a concrete wall of an elevator shaft. To complete the assembly it was necessary for Morrison-Knudsen's workmen to put into

place ties to provide the necessary spreader action between the gangs in order to maintain accurate concrete wall thickness. This is accomplished by placing "she-bolt" ties through the gangs. One employee works on each side of the outer surface of the two facing gangs of Symons Superforms. The injured employee was working on one side of these gangs while in the process of inserting and securing a she-bolt tie. He had climbed some 16 or 18 feet above the bottom of the gang, where he attached his safety belt lanyard to one of the V-shaped end-rail support rods in order that he might have both hands free with which to work. The employee relied on his safety belt to keep him in a vertical position. While he was standing with his feet on one of the horizontal crossbars of the gang, the light weld at the end of the V-shaped end-rail support rod, around which he had placed the lanyard of his safety belt, gave way and the lanyard slipped off the end of the V-shaped rod causing him to fall approximately 16 or 18 feet onto a wooden platform below. His injuries were serious.

At the close of the plaintiff's case and again at the close of the entire case, the manufacturer moved for a directed verdict on several grounds, one of which was that the evidence established that the manufacturer had given its vendee (the employer) adequate warning not to hang off V-shaped end-rail support rods. It argued that failure to pass on the warning to the employees was the fault of the employer and not the manufacturer, and that there could be no recovery from the manufacturer by the employee on the basis of the failure of the manufacturer-vendor to warn the vendee's employee. The motion was resisted, and the trial court denied it. The action was submitted to the jury, and after entry of judgment the manufacturer moved to have the verdict and judgment set aside, and to have judgment entered in accordance with its motion for a directed verdict. It also moved in the alternative for a new trial, pursuant to Rule 50(b), N.D.R.Civ.P.

Both motions were denied by the trial court.

When the manufacturer, as vendor of the Symons Superform, made delivery of the Superform to the employer at its jobsite in a semi-disassembled state for assembly and use, it furnished the employer with several copies of a technical manual containing instructions for the assembly and use of the Symons Superform. The manual is a book about one inch thick, containing about 115 pages. The first three pages are a section headed "Introduction." On page 3 of this section appears the following:

"E. SAFETY

"1. Horizontal crossmembers and the vertical rod facilitate easy, safe climbing and safety belt attachment. DO NOT HANG OFF V–SHAPED END RAIL SUPPORT RODS.

"2. All connections are bolted eliminating falling connecting hardware."

The sentence "DO NOT HANG OFF V–SHAPED END RAIL SUPPORT RODS" is described to us by the manufacturer as the warning which it issued to the employer and the employee.

There is no evidence that the so-called warning was ever communicated to the employee. There is evidence that the manuals were received by the employer and were discussed at some meetings of its employees.

The location and appearance of the V-shaped end-rail support rods was such that the jury could find that using them for support was a reasonable use, in the absence of an adequate warning not to do so.

■ This action is against the manufacturer only. The negligence, if any, of the employer is relevant only if it is the sole proximate cause of the plaintiff's injury. For the purpose of this appeal we may assume that the employer was negligent and

consider only the question of whether the manufacturer was also negligent.

Much of the dispute in this case rages around the adequacy of the so-called warning and whether the communication of the warning to the employer insulates it from liability toward the injured employee.

In Lindenberg v. Folson, 138 N.W.2d 573 (N.D.1965), we quoted with approval Section 398 of Restatement of the Law, Torts 2d, as follows:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design." 138 N.W.2d 573, at 582.

In the same case we held that

" . . . a manufacturer supplying a machine has a duty to exercise reasonable care to inform the user of any dangerous condition and character of the machine when put to the use for which it was manufactured and sold, where such danger is known or which reasonably should have been known by the manufacturer in the exercise of ordinary care." 138 N.W.2d 573, at 582.

And we quoted from 76 A.L.R.2d 96 as follows:

"One who has been injured by a product may seek to hold the manufacturer or seller liable on the theory that the design of the product made it dangerous and, apart from whether it was negligence so to design it, negligence inhered in a failure to warn of the danger." 138 N.W.2d 573, at 582.

The primary questions before us are whether the sentence quoted above from the technical manual constitutes an adequate warning of the danger which the jury found to be inherent in the foresee-able use of the product and whether the fact that the manufacturer communicated the sentence to the employer insulates the manufacturer from liability for the injury to the employee.

The trial court instructed the jury:

"A manufacturer of goods has a duty to use reasonable care in the design of, in the materials used in, in the assembly of, and to inspect the goods to protect those who will use the goods from unreasonable risk of harm while the goods are being used for their intended purpose and while the goods are being used for any purpose which could be reasonably expected. This duty extends to any person using the goods or in the area of its use whether or not the person using the goods was the actual purchaser.

"A manufacturer is not relieved of any duty he may have by the fact that he did not sell the article to the person using the article at the time such person was injured. The defect, however, must be one that existed at the time it left the control of the manufacturer.

"A manufacturer of goods has a duty to give a reasonable warning as to dangers inherent or reasonably foreseeable in using the goods in the manner specified. This duty applies even though the goods may not be used in their specified manner, so long as such use is one that the manufacturer should reasonably foresee.

"If a manufacturer of goods uses printed instructions to advise persons as to the proper use of the goods, he has a duty to use reasonable care to give accurate and adequate instructions with respect to such use and as to dangers inherent in using the article in an improper manner which the manufacturer should reasonably foresee."

The final paragraph of this instruction, we believe, points out that what is generally described as a duty to warn is actually two duties: one is to give ade-

quate instructions for safe use, and the other is to give a warning as to dangers inherent in improper use. The distinction is pointed out in Frumer and Friedman, Products Liability, Section 8.05:

> "There is substantial authority that the manufacturer must give both adequate directions for use and adequate warning of potential danger. Directions and warnings serve different purposes. Directions are required to assure *effective* use, warning to assure *safe* use. It is clear from the better reasoned cases that directions for use, which merely tell how to use the product, and which do not say anything about the danger of foreseeable misuse, do not necessarily satisfy the duty to warn." [Emphasis in original.]

In addition to the distinction between directions for use and warnings of danger, the duty to warn also involves the concept of the adequacy of any warning given, both as to clarity and completeness and as to the means used to communicate the warning to users and others within the zone of danger of injury or damage. These and other ramifications of the rules as to duty to warn and the adequacy of warnings are best stated in Restatement, Torts 2d, comment *n* to Section 388(c) [which is also applicable to Section 398, quoted above, if the manufacturer is also a seller or other supplier of the potentially dangerous instrumentality—see comment to Section 394 of Restatement 2d].

*"n. Warnings given to third person.* Chattels are often supplied for the use of others, although the chattels or the permission to use them are not given directly to those for whose use they are supplied, as when a wholesale dealer sells to a retailer goods which are obviously to be used by the persons purchasing them from him, or when a contractor furnishes the scaffoldings or other appliances which his subcontractor and the latter's servants are to use, or when an automobile is lent for the borrower to use for the conveyance of his family and friends. In all such cases the question may arise as to whether the person supplying the chattel is exercising that reasonable care, which he owes to those who are to use it, by informing the third person through whom the chattel is supplied of its actual character.

"Giving to the third person through whom the chattel is supplied all the information necessary to its safe use is not in all cases sufficient to relieve the supplier from liability. It is merely a means by which this information is to be conveyed to those who are to use the chattel. The question remains whether this method gives a reasonable assurance that the information will reach those whose safety depends upon their having it. All sorts of chattels may be supplied for the use of others, through all sorts of third persons and under an infinite variety of circumstances. This being true, it is obviously impossible to state in advance any set of rules which will automatically determine in all cases whether one supplying a chattel for the use of others through a third person has satisfied his duty to those who are to use the chattel by informing the third person of the dangerous character of the chattel, or of the precautions which must be exercised in using it in order to make its use safe. There are, however, certain factors which are important in determining this question. There is necessarily some chance that information given to the third person will not be communicated by him to those who are to use the chattel. This chance varies with the circumstances existing at the time the chattel is turned over to the third person, or permission is given to him to allow others to use it. These circumstances include the known or knowable character of the third person and may also include the purpose for which the chattel is given. Modern life would be intolerable unless one were permitted to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so. If the chattel is one which if ignorantly used contains no great chance of causing anything more than some comparatively trivial harm, it is reasonable to per-

mit the one who supplies the chattel through a third person to rely upon the fact that the third person is an ordinary normal man to whose discredit the supplier knows nothing, as a sufficient assurance that information given to him will be passed on to those who are to use the chattel.

"If, however, the third person is known to be careless or inconsiderate or if the purpose for which the chattel is to be used is to his advantage and knowledge of the true character of the chattel is likely to prevent its being used and so to deprive him of this advantage—as when goods so defective as to be unsalable are sold by a wholesaler to a retailer—the supplier of the chattel has reason to expect, or at least suspect, that the information will fail to reach those who are to use the chattel and whose safety depends upon their knowledge of its true character. In such a case, the supplier may well be required to go further than to tell such a third person of the dangerous character of the article, or, if he fails to do so, to take the risk of being subjected to liability if the information is not brought home to those whom the supplier should expect to use the chattel. In many cases the burden of doing so is slight, as when the chattel is to be used in the presence or vicinity of the person supplying it, so that he could easily give a personal warning to those who are to use the chattel. Even though the supplier has no practicable opportunity to give this information directly and in person to those who are to use the chattel or share in its use, it is not unreasonable to require him to make good any harm which is caused by his using so unreliable a method of giving the information which is obviously necessary to make the chattel safe for those who use it and those in the vicinity of its use.

"Here, as in every case which involves the determination of the precautions which must be taken to satisfy the requirements of reasonable care, the magnitude of the risk involved must be compared with the burden which would be imposed by requiring them (see § 291), and the magnitude of the risk is determined not only by the chance that some harm may result but also the serious or trivial character of the harm which is likely to result (see § 293). Since the care which must be taken always increases with the danger involved, it may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them and those in the vicinity of their use, to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character.

"Thus, while it may be proper to permit a supplier to assume that one through whom he supplies a chattel which is only slightly dangerous will communicate the information given him to those who are to use it unless he knows that the other is careless, it may be improper to permit him to trust the conveyance of the necessary information of the actual character of a highly dangerous article to a third person of whose character he knows nothing. It may well be that he should take the risk that this information may not be communicated, unless he exercises reasonable care to ascertain the character of the third person, or unless from previous experience with him or from the excellence of his reputation the supplier has positive reason to believe that he is careful. In addition to this, if the danger involved in the ignorant use of a particular chattel is very great, it may be that the supplier does not exercise reasonable care in entrusting the communication of the necessary information even to a person whom he has good reason to believe to be careful. Many such articles can be made to carry their own message to the understanding of those who are likely to use them by the form in which they are put out, by the container in which they are supplied, or by a label or other device, indicating with a substantial sufficiency their dangerous character. Where the danger involved in the ignorant use of their true

quality is great and such means of disclosure are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them. There are many statutes which require that articles which are highly dangerous if used in ignorance of their character, such as poisons, explosives, and inflammables, shall be put out in such a form as to bear on their face notice of their dangerous character, either by the additional coloring matter, the form or color of the containers, or by labels. Such statutes are customarily construed as making one who supplies such articles not so marked liable, even though he has disclosed their actual character to the person to whom he directly gives them for the use of others, and even though the statute contains no express provisions on the subject."

■ Judged by the standards we have set forth, and taking into account the potential of severe injury or death from use of the V-shaped support rods, the fact that the so-called warning could more properly be described as an instruction for use, the fact that it was only one sentence in a thick book of limited distribution which never reached the employee, and the failure to use other means of warning (such as red paint, decals, and the like) and the failure to make a change to eliminate the risk (such as relocating the support rods or strengthening them), we believe the jury was justified in finding the manufacturer negligent in either the design or manufacture of the Superform, or in failing to give an adequate warning, or in failing to adequately communicate a warning to the employee who was the ultimate user.

The trial court's instructions to the jury adequately cover these issues and are in conformity with Restatement and with our holdings in Lindenberg v. Folson, *supra*.

Of many similar cases illustrating the application of rules we have stated, we mention Johnson v. West Fargo Mfg. Co., 255 Minn. 19, 95 N.W.2d 497 (1959); Lovejoy v. Minneapolis-Moline Power Imple-

ment Co., 248 Minn. 319, 79 N.W.2d 688 (1956); and Hartmon v. National Heater Co., 240 Minn. 264, 60 N.W.2d 804 (1953). In those cases, instructions for use were given, but the warnings of danger were inadequate or absent. Another illustration is J. C. Lewis Motor Co. v. Williams, 85 Ga. App. 538, 69 S.E.2d 816 (1952), where liability was imposed although there was an instruction to use a pipe to deflect the gas fumes from a tractor, but the warning did not advise of the danger which would follow use without the deflector, due to inhalation of carbon monoxide contained in exhaust gas.

■ There is a line of cases holding that a warning communicated to an employer for communication to the employee may insulate the manufacturer from liability to the employee, where the employer fails to communicate the warning. Such cases include Weekes v. Michigan Chrome & Chemical Co., 352 F.2d 603 (CA6 1965); Younger v. Dow Corning Corp., 202 Kan. 674, 451 P.2d 177 (1969); Bertone v. Turco Products, 252 F.2d 726 (CA3 1958). However, such cases arise from factual situations where either the danger is slight or the difficulties of giving the warning are immense (as where toxic liquids are delivered in large quantities and used by many persons in small quantities), or where the warning was held to be adequate as a matter of law. Under the circumstances of this case, we hold that the determination of the adequacy of the warning is for the jury.

As is stated in Frumer and Friedman, Products Liability, Section 803(3):

"There is authority that adequate warning to the purchaser terminates the manufacturer's liability. But other cases, representing a better and more modern view, hold the manufacturer liable for failure to adequately warn other persons who might be forseeably subjected to the danger."

■ The manufacturer asserts that the court erred in withdrawing from the

jury the defenses of contributory negligence and assumption of risk. [This action was tried prior to adoption of the doctrine of comparative negligence, which eliminated the two defenses. See Wentz v. Deseth, 221 N.W.2d 101 (N.D.1974).] Even under the law in effect at the time of trial, the defenses of assumption of risk and contributory negligence were to be submitted to the jury only if there was evidence to support the theories. Wentz v. Deseth, *supra*. Here, while there was testimony that the plaintiff had been orally instructed to tie off on the vertical rod (as distinguished from the V–shaped rod), the court determined by interrogation of the plaintiff, clarifying prior unclear testimony, that the instructions came after the accident. There is nothing in the appearance of the V–shaped rod to indicate any danger in using it. In the absence of any warning, or obvious danger, we see no error in the withdrawal from the jury of the defenses of assumption of risk and contributory negligence.

■■  The manufacturer argues further that the court, by withdrawing the two defenses mentioned, and by giving the instructions as to the duty of the manufacturer quoted above, in effect instructed that strict liability in tort is the law of North Dakota, and that this was error. To this there are two answers. The first is that the instructions quoted are not equivalent to an instruction on strict liability in tort, since the instructions given contain the element of negligence in manufacture and negligence in warning as alternative prerequisites to recovery, while strict liability in tort (see Section 402A, Restatement, Torts 2d) permits recovery without negligence if the design, manufacture, or instructions for use present an unreasonable risk. The second answer is that we have not held that strict liability in tort is not the law in North Dakota. We have not yet been presented with a case where that question is at issue. See Haugen v. Ford Motor Co., 219 N.W.2d 462 (N.D. 1974). Certain of our prior cases have held that some parts of the doctrine of strict liability in tort are the law of this State—for example, elimination of the requirement of privity in Lang v. General Motors Corp., 136 N.W.2d 805 (N.D.1965), which quotes and cites extensively from strict liability cases in other jurisdictions.

■  The manufacturer complains next of the refusal of a requested instruction to the effect that a manufacturer is not liable for changes in the product after it leaves his control. The matter was adequately covered in the second paragraph of the instruction quoted above. Other allegations of error in the refusal of requested instructions are likewise without merit. Several of them incorrectly assume that the court was instructing on the doctrine of strict liability in tort. Another states that it was error to refuse instructions as to contributory negligence in following the manufacturer's instructions. However, as we have stated, there is no showing that the instructions reached the employee, so it was not error to refuse to give the requested instructions.

■  Another requested instruction asserted that the employee assumed any risk involved in working in high places. This is true, but he did not assume the risk of an unexpected failure of a welded joint which he had no reason to believe would not hold his weight. There was no error in refusing to give this requested instruction.

■  Finally, the manufacturer alleges that the amount of the verdict indicates that the jury gave excessive damages under influence of passion and prejudice, but the manufacturer gives no basis for this assertion except the amount of the verdict. The amount of damages is a matter peculiarly within the province of the jury, and we upset a jury's determination only in rare and exceptional cases. See Skjonsby v. Ness, 221 N.W.2d 70 (N.D. 1974). Here, the plaintiff fell 16 to 18 feet and landed on his head, which was

partially protected by a hard hat. In addition to a concussion and abrasions and the like, he had injuries to his neck which a physician estimated caused a 10 per cent permanent partial disability. His special damages were about $5,500, and his life expectancy is 47.2 years. We decline to hold that a verdict of $25,033.90 is excessive.

■■■■ The manufacturer also asserts that the amount of the verdict shows that the verdict was unlawfully arrived at, presumably because the fact that the verdict is not in round numbers indicates that the jury improperly arrived at a quotient verdict. No proof of this assertion is offered. The mere allegation of a quotient verdict is not enough to justify a new trial. The use of a quotient verdict is one matter in which affidavits of jurors may be used. Rule 59(b)(2), N.D.R.Civ.P. None is offered here.

■■■ Furthermore, not all quotient verdicts are grounds for reversal. Only those quotient verdicts which are arrived at pursuant to a prior agreement to be bound by the result of the computation are defective. Great Northern Ry. Co. v. Lenton, 31 N.D. 555, 154 N.W. 275 (1915). There is no indication of such a prior agreement here.

We find no error, and the order denying motion for judgment notwithstanding the verdict and alternative motion for new trial is affirmed.

ERICKSTAD, C. J., and KNUDSON and PAULSON, JJ., concur.

TEIGEN, Judge (dissenting).

I dissent.

The majority have held that "under the circumstances of this case, we hold that the determination of the adequacy of the warning is for the jury." I do not agree.

At the close of the plaintiff's case and again at the close of the entire case, the manufacturer moved for a directed verdict on several grounds, one of which was that the evidence established that the manufacturer had given its vendee (Morrison-Knudsen) adequate warning not to hang off v-shaped end rail support rods. It argued that failure to pass on the warning to the employees was the fault of Morrison-Knudsen and not the manufacturer, and that there could be no recovery from the manufacturer by Morrison-Knudsen's employees on the basis of the failure of the manufacturer-vendor to warn the vendee's employees. The motion was resisted and the trial court denied the same.

The action was submitted to the jury and, after entry of judgment, the manufacturer moved to have the verdict and the judgment entered thereon set aside, and to have judgment entered in accordance with its motion for a directed verdict. It also moved in the alternative for a new trial. Both motions were denied by the trial court.

The appeal in this case is taken from the court's order denying the manufacturer's motion for judgment notwithstanding the verdict or in the alternative for a new trial. This court, on appeal from such order, may review the ruling on the motion for directed verdict and may order that judgment be entered when it appears from the evidence that a verdict should have been directed. Section 28-27-29.1, N.D.C.C.; Haga v. Cook, 145 N.W.2d 888 (N.D. 1966); Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588 (1953).

On this appeal it is the duty of this court to first determine whether, from the evidence, it appears that a verdict should have been directed for the manufacturer.

Before a motion for judgment notwithstanding the verdict will be granted it must be conclusively established that the party making the motion is entitled to judgment as a matter of law, after considering the evidence in the light most favorable to the verdict. Kunze v. Stang, 191 N.W.2d 526 (N.D.1971); Linington v. McLean County,

161 N.W.2d 487 (N.D.1968); Johnson v. Frelich, 153 N.W.2d 775 (N.D.1967); Haga v. Cook, *supra*.

An examination of the record in this case establishes, without contradiction, that (1) the manufacturer manufactured and sold to Morrison-Knudsen all of the components of the Symons Superforms System involved in this action; (2) the manufacturer delivered to Morrison-Knudsen a supply of a technical manual necessary for the assembly and use of the Symons Superforms System; (3) immediately following the accident one of the technical manuals furnished by the manufacturer was seen by the safety engineer reposing on the desk of the project superintendent of the MSR Project, where this employee was working; (4) contained on the third page of the technical manual is the following safety instruction: "E. SAFETY. 1. Horizontal crossmembers and the vertical rod facilitate easy, safe climbing and safety belt attachment. DO NOT HANG OFF V-SHAPED END RAIL SUPPORT RODS."; (5) Morrison-Knudsen's project manager on the Perimeter Acquisition Radar Construction Project (PAR), located just a few miles from the MSR Project and on which Symons Superforms were also used, testified that he had received two copies of the technical manual, had noted the instruction and warning quoted above, and had directed that the employees on that project, while working on Symons Superforms, be instructed at safety meetings not to utilize the v-shaped end rail support rods to tie onto or to hang off from. There is no evidence whatever that the project manager, or the safety engineer, or anyone in a supervisory capacity on the MSR Project on which the injured employee was working, had read the technical manual, and the employee testified that he had not been instructed by his supervisors or safety engineer that he should not hang off v-shaped end rail support rods. In fact, the supervisory employees on the MSR Project were not called to testify at the trial.

Thus the only possible conclusion permitted under the evidence introduced, which is not in conflict, is that the manufacturer warned its vendee, Morrison-Knudsen, not to hang off or tie onto the v-shaped end rail support rods, and that the warning was adequate, understandable and complied with by the supervisory personnel of the same employer on its other related project. There is no evidence of any reason why the same compliance was not effected on the MSR Project on which this employee was employed. The only logical inference which can be drawn from the evidence adduced at the trial is that the warning was adequate, understandable and entitled to credence. There is no evidence whatsoever that the warning was not adequate to apprise the project manager, the supervisors and the safety engineer of the MSR Project of the danger involved. Certainly the manufacturer had no duty to foresee that these technicians, on such a sophisticated project as this, would fail to follow the warning.

The evidence also establishes without contradiction that the Symons Superforms had been in use on the two sites under construction by Morrison-Knudsen for some months prior to the accident; that a reading of the technical instructions contained in the technical manual was necessary to assemble and use the Symons Superforms, and the only logical inference which I can draw from such evidence is that the technical manuals were used for the purpose intended on the MSR site on which the employee was working. The fact that he was not instructed by his supervisors not to hang off the v-shaped end rail support rods can support no conclusion except that the supervisors were negligent and failed, as agents of the employer, to warn the employee of the dangers incident to his employment in the use of the v-shaped end rail support rods to hang off from.

It is established law in this state that an employer has a duty to warn an employee of dangers incident to his employment, of

which the employer has knowledge and of which the employee has no knowledge. Kittock v. Anderson, 203 N.W.2d 522 (N. D.1973).

Where there is a safe way and an unsafe way of doing work, the employer must instruct the employee how to do the work to avoid injury. Titus v. Titus, 154 N.W. 2d 391 (N.D.1967); Vick v. Fanning, 129 N.W.2d 268 (N.D.1964).

The majority have cited and rely on Lindenberg v. Folson, 138 N.W.2d 573 (N.D. 1965). That case was an action by an employee against his employer and the manufacturer of a potato harvesting machine for injuries received when the employee's hand became caught in certain gears of the machine. In that case we held both the employer and the manufacturer liable. However, that case is distinguishable from the case at bar for the reason that neither the employer nor the manufacturer gave any warning of the danger involved in using the machine. That case is not applicable here.

Our statutes require that an employer, in all cases, shall indemnify his employees for losses caused by the employer's want of ordinary care (Section 34–02–03, N.D.C.C.), unless relieved of liability under the Workmen's Compensation laws (Section 65–01–08, N.D.C.C.).

In this case the manufacturer sought to implead Morrison-Knudsen for indemnity. However, Morrison-Knudsen moved for and obtained a summary judgment of dismissal of the third-party complaint on the grounds that it was covered by workmen's compensation, and that the employee had qualified for workmen's compensation and had received an award of permanent partial disability under the Workmen's Compensation law, thus absolving the employer, Morrison-Knudsen, of all liability, pursuant to Section 65–01–01, N.D.C.C. No appeal has been taken from the summary judgment of dismissal.

If I assume the lack of privity between this employer and the manufacturer is no defense, there remains only a legal issue which is: May a manufacturer be found negligent by an injured employee of a manufacturer's vendee, where the manufacturer has given adequate warning to its immediate vendee, on the basis of the failure of the manufacturer to have also warned its vendee's employee. The majority have cited no North Dakota decisions and my research discloses none which involve an issue substantially identical.

The text citations relied on by the majority are necessarily general and not adapted to the specific circumstances of this case. However, an exception is noted in the comment to Section 394, Restatement, Torts 2d, quoted by the majority, which I believe is apropos.

"All sorts of chattels may be supplied for the use of others, through all sorts of third persons and under an infinite variety of circumstances. This being true, it is obviously impossible to state in advance any set of rules which will automatically determine in all cases whether one supplying a chattel for the use of others through a third person has satisfied his duty to those who are to use the chattel by informing the third person of the dangerous character of the chattel, or of the precautions which must be exercised in using it in order to make its use safe. There are, however, certain factors which are important in determining this question. There is necessarily some chance that information given to the third person will not be communicated by him to those who are to use the chattel. This chance varies with the circumstances existing at the time the chattel is turned over to the third person, or permission is given to him to allow others to use it. These circumstances include the known or knowable character of the third person and may also include the purpose for which the chattel is given. Modern life would be intolerable

unless one were permitted to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so."

The majority also quote from Frumer and Friedman, Products Liability, § 8.-03(3), which, although it recognizes there is authority that adequate warning to the purchaser terminates the manufacturer's liability, the authors editorialize and state that cases to the contrary represent a better and more modern view. I do not agree that the "other cases" referred to in that text support their conclusion.

The majority also cite three cases which they state hold that a warning communicated to an employer for communication to an employee may insulate the manufacturer from liability to the employee where the employer fails· to communicate that warning, and then attempt to distinguish these cases on the basis that "either the danger is slight or the difficulties of giving the warning are immense * * * or where the warning was held to be adequate as a matter of law." The cases which they cite are Weekes v. Michigan Chrome & Chemical Co., 352 F.2d 603 (CA6 1965); Younger v. Dow Corning Corp., 202 Kan. 674, 451 P.2d 177 (1969); and Bertone v. Turco Products, 252 F.2d 726 (CA3 1958). However, in each of these cases, the court specifically held that if the manufacturer's warning was adequate, there could be no recovery, irrespective of whether the buyer may have acted negligently as to its employee.

The holding of these three cases is succinctly stated in *Younger*, as follows:

"We hold the rule announced in *Bertone* and *Weekes* is applicable to the facts herein—the manufacturer of a product which is potentially hazardous to health and who gives adequate warning of such potential hazard, by label or otherwise, to its immediate vendee, *an industrial user*, has no additional duty to warn the vendee's employee of such hazards, and is not liable in a negligence action to such employee for failure to do so."

These cases turn on questions of fact, not on questions of law.

In 63 Am.Jur.2d, Products Liability, Section 47, at 57, it is stated:

"Assuming that there may be recovery regardless of lack of privity of contract, on the basis of a manufacturer's negligence in failing to warn his immediate buyer, no recovery on such basis can be had by one other than the immediate buyer where adequate warning was given the immediate buyer. Thus, it has been held that where adequate warning was given to the buyer of the product by the seller, there could be no recovery from the seller by an injured employee of the buyer on the basis of failure of the seller to warn the buyer's employees."

In Bertone v. Turco Products, *supra*, the United States Court of Appeals, applying New Jersey law, held that the manufacturer of a cleaning solution could not be held liable for negligence of the plaintiff's employer in failing to pass on to the plaintiff the manufacturer's adequate warning. It said that the employee's injury was a result, not of the manufacturer's negligence but of the plaintiff's employer's negligence, where the warning given by the manufacturer to the user was adequate, because the user was under a duty to pass along to its employees the manufacturer's warning.

In Weekes v. Michigan Chrome & Chemical Company, *supra*, the plaintiff, an employee of a company where the distributor's products were used, contracted a serious skin condition as a result of working with the product, and was awarded a jury verdict in the amount of $24,000 damages against the distributor on the ground that the distributor had negligently failed to provide adequate warning to the plaintiff of dangers involved with the use of the product. On appeal, the defendant-distributor charged the district court erred in denying its motion for a directed verdict.

The court granted a new trial. The case dealt primarily with whether the defendant-distributor had given any warning of the hazards of its product and whether such notice, if given, was adequate. The defendant-distributor asserted "that it was not required to see to it that each person who might be expected to use the wax was individually and by defendant adequately warned of its dangerous propensities." In response the Court of Appeals said, 352 F. 2d at 607:

"We make clear that we do not hold to the contrary. To do so would visit upon a manufacturer a burden impossible to carry. See Bertone v. Turco Products, Inc., 252 F.2d 726, 728 (CA 3, 1958); Nishida v. E. I. Du Pont De Nemours & Co., 245 F.2d 768, 773–774 (C.A.5 1957), cert. denied, 355 U.S. 915, 78 S. Ct. 342, 2 L.Ed.2d 275 (1958)."

The court granted a new trial, however, on the basis that there was evidence from which a jury could find that the defendant-distributor did not exercise reasonable care in its labeling practices or in informing of the hazards involved in using the product; that if it was thus delinquent it could not rely on its user to supply the needed warnings and precautionary instructions.

In Younger v. Dow Corning Corporation, *supra*, the Supreme Court of Kansas held that where the industrial user of manufacturer's chemical compound had received adequate warning from labels placed on the product by the manufacturer of the potential health hazards that might arise from using the product without ventilation or from breathing the vapors of such product over prolonged periods, the manufacturer had no additional duty to warn the user's employees of such hazards and could not be held liable to the employees in a negligence action for failure to do so.

In Foster v. Ford Motor Co., 139 Wash. 341, 246 P. 945, 48 A.L.R. 934 (1926), it was held that a manufacturer need not follow a machine (Fordson tractor) into the

hands of the servants or employees of the purchaser and notify each one individually that in extreme situations the machine might become dangerous. In the body of the opinion, 246 P. 947, it is stated:

"That the manufacturer who puts out an article with notice to the purchaser of its limitations, restrictions, or defects is not liable to third persons injured thereby is so thoroughly established as to be undisputed. Logan v. Cincinnati, N.O. & T.P. Ry. Co., 139 Ky. 202, 129 S.W. 575; Olds Motor Works v. Shaffer, 145 Ky. 616, 140 S.W. 1047, 37 L.R.A., N.S., 560, Ann.Cas. 1913B, 689; Pullman Co. v. Ward, 143 Ky. 727, 137 S.W. 233; Lewis v. Terry, 111 Cal. 39, 43 P. 398, 31 L.R.A. 220, 52 Am.St.Rep. 146; Griffin v. Jackson Light & Power Co., 128 Mich. 653, 87 N.W. 888, 55 L.R.A. 318, 92 Am.St.Rep. 496; Ward v. Pullman Co., 138 Ky. 554, 128 S.W. 606."

In Soto v. E. C. Brown Co., 283 App. Div. 896, 130 N.Y.S.2d 21 (1954), the Supreme Court of New York, Appellate Division, held that the manufacturer of a pressure pump would reasonably expect that one purchasing the pump would convey to his employees the caution contained in the instructions which accompanied the pump to securely attach a hose, and reversed a jury verdict for damages for personal injuries claimed to have been sustained through the negligence of the manufacturer and ordered a dismissal of the complaint. It held that the burden was on the plaintiff to prove that, when assembled as stated in the instructions of the manufacturer, there was concealed a probable source of danger which could arise in the operation of the pump for the purpose for which it was intended, of which danger the manufacturer did not give notice.

In May v. Allied Chlorine & Chemical Products, Inc., 168 So.2d 784 (1964), the District Court of Appeal of Florida held that a manufacturer or distributor of a chemical regularly used in the business of another, who knew the chemical to be dan-

gerous, had no duty to warn the user that only a particular type of gas mask would be effective in heavy concentrations of the gas generated by the chemical, nor was it required to inform the user's employees of details of precautionary measures which should be taken in the event of the misuse of the product.

In Wilson v. E–Z Flo Chemical Company, 281 N.C. 506, 189 S.E.2d 221 (1972), the Supreme Court of North Carolina dismissed a third-party judgment against a manufacturer, secured by a distributor of herbicide, to indemnify the distributor for a judgment obtained by a truck farmer against the distributor for damages resulting from the use of the herbicide on a newly-planted squash crop. The manufacturer of the herbicide had warned the distributor that the herbicide should not be used on vine crops under certain conditions. The distributor had sold the herbicide to the truck farmer without having passed on the warning. The court held that the rule to the effect that where a retailer purchases personal property from a manufacturer or wholesaler for resale with implied or express warranty of fitness, and the retailer resells to the consumer with the same warranty, and the retailer is compelled to pay for breach of warranty and may recover his entire loss from the manufacturer, is not applicable as between a manufacturer who warned and the distributor who received the warning but fails to pass the warning on to the user, who sustains injury as a result of not having received the warning. The court held that the primary responsibility was on the distributor to notify the user, his customer, of the limitation on the fitness. Although this case does not involve an employer-employee relationship, or negligence, the same theory is applied in a breach of warranty action.

In McKay v. Upson-Walton Company, 317 F.2d 826 (7 Cir. 1963), the circuit court affirmed the trial court's judgment dismissing the action after a jury had failed to agree on a verdict in a wrongful death action against the manufacturer of a tackle block and hook which broke as a result of being overloaded, causing the death of an employee of the user. The product was rated in the catalog supplied to the user as having a 2½ ton working capacity. However, at the time of the accident, it was used in connection with the lifting of a load of 9,100 pounds. The argument was made that the capacity of the product should have been stamped on the product. The court, however, did not agree and held that the failure of the manufacturer to visibly mark or label the product with its working load capacity did not constitute negligence, on the theory that the manufacturer was under duty to foresee that someone would attempt to load the tackle block and hook beyond its capacity, as specified in its catalog and which was ascertainable from the catalog number appearing on the device.

In Jacobson v. Colorado Fuel & Iron Corporation, 409 F.2d 1263 (9 Cir. 1969), a wrongful death action for the death of an employee brought against the manufacturer of the product which broke while being used in the employer's business, the judgment for the defendant was affirmed. The court held that where a supplier furnishes chattels, the use of which are directed by technicians or engineers, it is sufficient to insulate the supplier from liability for failure to warn if warnings given are sufficient to apprise the engineers or technicians of the dangers involved, and that there is no duty of the supplier to foresee that engineers or technicians will fail to follow warnings given or to employ knowledge possessed.

The uncontradicted evidence, in my opinion, establishes, as a matter of law, that the manufacturer of the Symons Superforms which were sold to Morrison-Knudsen, a large contractor and industrial user, who gave adequate warning in its technical manual to its immediate vendee of a poten-

tial danger if improperly used, had no additional duty to warn the vendee's employees of such hazard and is not liable in a negligence action to such employees for failure to do so.

The evidence in this case establishes that the v-shaped end rail support rods, from which the workmen were not to hang off, were installed for the purpose of strengthening the end rail of the various panels contained in the gang. There is no evidence that a weak weld at the end of such v-shaped end rail support rod in any way made the product defective for the purpose intended. There is no evidence that there was a defect in the product for the purpose intended, but it is clear that the manufacturer anticipated that the v-shaped end rail support rods might be used to hang off of and, for that purpose, it presented a hazard. Therefore the manufacturer warned against using these rods for that purpose.

There is no evidence here that we are confronted with a highly dangerous explosive or poisonous product, or an article intrinsically or inherently dangerous or unsafe when used in accordance with the instructions contained in the technical manual supplied by the manufacturer to its vendee. I believe that the manufacturer had every right to anticipate that Morrison-Knudsen, a large contractor and industrial user to whom the Symons Superforms had been supplied, would pass on the warning of the manufacturer to its employees who were assigned the task of erecting and assembling these concrete forms, and that proper precautionary measures would be taken by Morrison-Knudsen, through its technical and supervisory personnel, to make use of the product safe for its employees in accordance with its duty under the master-servant rule.

For the reasons aforesaid, I believe that the motion for judgment notwithstanding the verdict should have been granted by the trial court.