Arlan WENTZ, by his next friend, Dennis Wentz, Plaintiff and Appellant,

v.

Leland DESETH, Defendant and Appellee.

Civ. No. 8899.

Supreme Court of North Dakota.

June 26, 1974.

Duffy & Haugland, Devils Lake, for plaintiff and appellant.

Traynor & Rutten, Devils Lake, for defendant and appellee.

VOGEL, Judge.

The plaintiff, Wentz, has appealed from an order denying his motion for judgment notwithstanding the verdict or in the alternative for a new trial. He alleges that the evidence is insufficient to sustain a verdict of dismissal of his complaint and that the trial court erred in instructing the jury on the defense of assumption of risk.

Wentz brings the action against his eighth-grade teacher, Deseth, for burns suffered while in school, during a candle-making project supervised by Deseth. Deseth left the schoolroom during a study period and the students were unsupervised for a period of fifteen minutes or more.

Before leaving the classroom, Deseth had instructed the students to put out their candles. During his absence, however, someone relit the candle sitting on Wentz's desk, and, while Wentz was seated at his desk and engaged in conversation with students immediately to his left, someone poured after-shave lotion upon the flame of his candle. After-shave lotion was being used to add scent to the candles, and Deseth was aware of its presence and intended use. The lotion, which was highly flammable, caught fire. Flames spread from the container to Wentz's clothing, severely burned him, and caused permanent injury.

There is nothing to show that Wentz had any knowledge of the dangerous flammability of the after-shave lotion, or that he had anything to do with igniting it or that he even knew it was being ignited. He was sitting at his desk obediently. He had nothing to do with the ignition of the lotion or the spread of the flames to his clothing.

Deseth admitted knowing that the after-shave lotion was volatile. There is no

showing that any student had knowledge of the flammable nature of the lotion.

Wentz testified that he did not see Deseth leave the room nor did he hear him ask the students to put out their candles. However, a witness for Deseth testified that he (the witness) put out Wentz's candle when Deseth ordered the candles extinguished, and other witnesses corroborated testimony that all candles were put out before Deseth left the room. There were seven or eight students, all boys, in the room. There is testimony by one of the students that the only boys who had matches were Wentz and another boy, not named, but the other boys on occasion borrowed matches from Wentz and the other student when they wanted to light their candles.

■ The burning candle sitting on Wentz's desk, undisturbed, was not the proximate cause of Wentz's injuries. There was an intervening cause, put in motion by another student's pouring or squirting the after-shave lotion upon the candle, thereby igniting the lotion, which resulted in flames spewing from the container. It was these flames which caused the injury, not the flame of the candle.

The trial court appropriately instructed the jury on contributory negligence generally, following the language of North Dakota Jury Instruction No. 700. This instruction was followed by a paragraph which the trial judge, as well as the attorneys for both parties, described as an instruction on "assumption of risk." The instruction, to which the plaintiff appropriately objected, reads as follows:

"Another defense affirmatively interposed by the Defendant is that of assumption of risk. You are instructed that a student assumes the ordinary hazards and risks of his everyday life which he either knows, or should know and appreciate through his degree of intelligence. He assumes those dangers that are so open and obvious to his senses that one of his mental capacity and experience would in the ordinary exercise of care and prudence common to persons of like mental capacity and

experience, would know and appreciate, and would be expected to be sufficiently attentive and understanding to avoid. In other words, the student's assumption of the hazards and dangers incident to his studies is to be determined by his capacity to know, understand and appreciate them, and his caution, alertness and aptitude to avoid them. In that regard you have a right to consider the Plaintiff, Arlin Wentz, as he appeared before you and his apparent ability as to experience, alertness and understanding."

This instruction appears to be a blend of elements of instructions on assumption of risk, contributory negligence, and the degree of care required of infant plaintiffs.

■ As an instruction on assumption of risk, it would be inadequate and erroneous. Borstad v. La Rouque, 98 N.W.2d 16 (N.D.1959), states the required elements of the defense of assumption of risk, which are: knowledge of an abnormal danger, voluntary exposure to it, freedom of choice to avoid it, and injury proximately caused by the abnormal danger.

■ Since there is no basis for an instruction on assumption of risk, no instruction on the subject should have been given.

The rule as to the degree of care required of minors is stated in Moe v. Kettwig, 68 N.W.2d 853 (N.D.1955); Schweitzer v. Anderson, 83 N.W.2d 416 (N.D. 1957); and Sheets v. Pendergrast, 106 N.W.2d 1 (N.D.1960), and is condensed into North Dakota Jury Instruction No. 103 as follows:

"The duty to exercise ordinary care imposed upon a minor child is properly measured by what a person of his age, capacity, intelligence and experience would have done under the same or similar circumstances. Negligence, as applied to a minor child, is the doing of that which an ordinarily prudent person of the age, intelligence, experience and capacity of such child would not do under the same or similar circumstances, or the failure to do that which such a person would do under the same or similar circumstances."

We believe it is confusing and prejudicial to make a hybrid instruction of the concepts of contributory negligence and the degree of care required of a minor and to denominate that hybrid as an instruction on assumption of risk. While it is true, as the appellee asserts, that the instruction does not specifically state that the student's assumption of the risk would require a verdict for the defendant, such a result is necessarily implied by describing assumption of risk as a defense. We believe it is essentially misleading to describe a student's duty of ordinary care as an "assumption of the hazards and dangers incident to his studies." Such an instruction implies that any injury resulting from a hazard or danger incident to his studies is one which must be borne by him if he had the capacity to know, understand, and appreciate, regardless of whether he was negligent or not.

And since this instruction follows an entirely adequate and unexceptionable instruction on contributory negligence, the jury could only understand that the challenged instruction contains—as it says it does—a separate defense. To the extent that it permits a minor to exercise a lesser degree of care than the adult standard, the portion of the challenged instruction relating to the duty of care applicable to minors is not a defense at all, but a mitigation of the duty of care. To the extent that the instruction relates to assumption of risk, it is incomplete, misleading, and not supported by any evidence to justify submission of the defense of assumption of risk. To the extent that it purports to cover contributory negligence, it is both incomplete and repetitious in part.

If the instructions had been clearly correct, we might have assumed that the jury found for the defendant on the ground of intervening cause, in which case we would have affirmed the judgment. But where instructions are confusing to us, and presumably to the jury, we cannot know whether the jury was confused and found for the defendant on the erroneous ground that there was an assumption of risk, or whether it decided for the defendant—as it had a perfect right to do—on the ground of intervening cause.

"A general verdict of the jury returned under a proper and an erroneous instruction cannot be upheld. . . . The general verdict of the jury makes it impossible for us to determine upon which theory the jury's verdict is based. The jury may have founded it upon the issue to which the erroneous instruction related, and that instruction may have been controlling in the jury's determination of the issues of this case.

"Therefore, the erroneous submission to the jury of one of several issues is ground for granting a new trial where the jury renders a general verdict and it is impossible for the appellate court to determine upon which of the issues the verdict is based." Barta v. Hondl, 118 N.W.2d 732, 736 (N.D.1962).

Incidentally, we wish to point out that Section 9–10–06, N.D.C.C., which is the source of the doctrine of assumption of risk in North Dakota [Wheat v. Patterson, 154 N.W.2d 367 (N.D.1967)], was amended by the 1973 Legislature when it adopted the doctrine of comparative negligence [see Chap. 78, 1973 Session Laws, now Sec. 9–10–07, pocket supp. to N.D.C.C.]. Section 9–10–06 formerly read:

"Every one is responsible not only for the result of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself. The extent of the liability in such cases is defined by sections 32–03–01 to 32–03–19, inclusive."

By the 1973 legislation, Section 9–10–06, N.D.C.C., was amended and re-enacted by omitting therefrom the exception reading "except so far as the latter, willfully or by want of ordinary care, has brought the injury upon himself." This is the language upon which assumption of risk was based. Wheat v. Patterson, *supra*. Now that this language has been deleted from the statute, the affirmative defenses of assumption of risk and contributory negligence no longer are the law of North Dakota, and negli-

gence cases now are governed by the doctrine of comparative negligence.

■ This action, however, arose and was tried prior to the adoption of Chapter 78, 1973 Session Laws, and is governed by the former law.

The order denying the motion for a new trial is reversed, and a new trial is granted. The order denying judgment notwithstanding the verdict is affirmed.

ERICKSTAD, C. J., and PAULSON, J., concur.

KNUDSON, Judge (dissenting).

I concur in the opinion of the majority to the extent that I believe that it was error for the trial court to instruct the jury on assumption of risk, but I believe that it was error without prejudice as there is, in my opinion, no evidence to support a finding of negligence on the part of the defendant. Accordingly, I would affirm the judgment of dismissal.

TEIGEN, Judge (dissenting).

I do not agree that under the state of the record in this case the court erred in instructing the jury on the defense of assumption of risk. Assumption of risk was pleaded as an affirmative defense and the evidence adduced was sufficient, in my opinion, to warrant the instruction.

"In determining whether there is evidence that will warrant an instruction, the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence on which to base it, although it might be slight and inconclusive, or opposed to the preponderance of the evidence. * * *

"It is not necessary that there be categorical evidence as to a matter covered by an instruction, it being sufficient if there is evidence of facts from which the fact might be inferred." 53 Am.Jur. Trial, § 580.

"Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." 53 Am. Jur. Trial, § 582.

The evidence reveals that Wentz was seated at his desk, talking with other students gathered around; that his candle had been relighted, and one of the students poured shaving lotion onto the flame of the candle; that it flared up and the top of the bottle containing the shaving lotion was aflame when he removed it from the candle; that he put the flame out and set the bottle of shaving lotion down. Thereafter, another student picked up the bottle and he also poured shaving lotion onto the flame of the candle. It was during this second episode that Wentz was burned.

In its memorandum decision denying the motion for a new trial, the trial court reasoned that the evidence was sufficient for the jury to infer that Wentz was "participating in the entire episode to the extent of lighting the candle or watching the shaving lotion being poured on the flame." The evidence is purported to establish that it was highly unlikely that the plaintiff would be totally oblivious to what was going on, considering the small size of the class and the activity it was engaged in at the time. I agree.

It appears that the rest of the students knew what was going on and the jury could infer from their testimony that Wentz also knew and was cognizant of the dangerousness of his voluntary exposure to the known danger by continuing to sit at his desk under these circumstances. I would affirm.